That's all. On behalf of BF1, Ms. Barbara Bell, on behalf of the MLEs, Mr. Keith A. Collins. Ms. Bell. Or I should say Ms. Bell. Good morning. Before I begin, I'd like to introduce a distinguished lawyer. This is Stanley Jekylla. He's my colleague. He's been practicing law for 57 years. At least one of you knows him. I know Mr. Jekylla. He's appeared in front of me when I was a trial judge a long, long time ago. It's my pleasure to meet him today. I've never met him before. I apologize to the court that I'm not wearing a tie, but I've had a problem physically, and I can't use my hand. Well, I think it's very egalitarian that if she's not wearing a tie, you shouldn't be required to either. Thank you.  Good morning. This case is about the totality of the evidence, and the record as a whole shows that the plaintiff, Scott Kern, was suffering from a pre-existing condition at the time he was forced to retire from police work. And that condition was anxiety and depression, and it was exasperated by a PAC attack that Mr. Kern suffered in the Kane County Jail in January 2010. The fact that Mr. Kern believed that he was suffering from post-traumatic stress disorder is not dispositive in this case. The overwhelming evidence shows that Mr. Kern was not well at the time he panicked in the jail when he thought an inmate was going to attack him. He was suffering from depression, anxiety. Those symptoms go back a long time, at least to 2005, maybe even before then. And when what most of us would consider a non-event, when an inmate began to scratch his head, Mr. Kern perceived that as a threat to himself and to his partner. He went into an extreme panic attack, and he was never able to return to work. Now, Counsel, you presented medical evidence that this panic attack following the fingerprinting incident was related to this pre-existing condition. But did any of the doctors opine within a reasonable degree of medical certainty that the panic attack actually worsened the condition? Yes, they did. Dr. Weems writes, the illness story of PTSD caused by a traumatic event cannot be supported by the available facts. Instead, the story supported by the facts is more a story of pre-existing depression and anxiety and panic caused by a change in belief about suitability for police work. But in my opinion, the illnesses, okay, excuse me, don't need to go that far. Dr. Shaw also states, of note, the panic attack was due to the existing depressive order. Its occurrence did coincide with a stressful situation in the jail. But did they opine that it worsened the condition? That's what we're talking about here, that it worsened it. I believe the record shows that his pre-existing condition triggered the panic attack. That's why he reacted. So he was suffering from depression and anxiety, and he reacted in an extreme way to a prisoner scratching his head. I don't know if Justice Enoff was attempting to make the point, but this case seems to be about the difference between, subtle that it may be, an injury versus the symptomology of an injury. And so was the panic attack in the jail, was that an injury? Or was it nothing more than a symptom of an injury or prior problem that your client had? It was a symptom of his prior condition of depression and anxiety. And the panic attack, if you look at the evidence, the fact that he was never able to return to duty after that panic attack, shows that the panic attack, that his condition worsened to the point that he was forced to retire from police work. One of the doctors, I think, found that he was capable of service, didn't he? That is true. Dr. Ween did state that. He said that the problem had resolved itself to the point that Mr. Kern could return to duty. Did the officer attempt alternate service, or did he decide to retire and then seek a pension? He did try to go back to work. He had restrictions after being treated at a hospital, I believe in Hoffman Estates. He tried to return to work, and there were restrictions that were put on his duties, and the police department would not accept that. So the police department sent Mr. Kern to their own doctor, and that doctor said that Mr. Kern was suffering from depression and anxiety and that he was not fit for duty. How is the judgment against the manifest way of the evidence? I think that if you look at the record as a whole, it shows a man suffering from depression and anxiety. All three doctors agree that that was his problem, even Dr. Oblosky, who is probably the harshest, Mr. Kern says, it is my opinion held with a reasonable degree of medical psychiatric certainty that the plaintiff's mental disability is solely caused by a preexisting depressive anxiety condition. So all three doctors have stated that Mr. Kern had a preexisting condition, and that's why he reacted so strongly in the jail to what was really a non-event for somebody who was healthy. I don't recall a case similar to this, where the problem was related to mental difficulties that may or may not have been brought about by something that took place during a procedure or an incident that would deem to be somewhat more of a risk than some of the cases that talk about the police officer that fell out of his chair in the office of the station. Do you remember that case? Yes, I do, yes. So the point is that there are cases that say that yes, there are police officers who are injured, but it's not in the line of duty because the risk to be foreseen does not contemplate an elevated risk that only police officers are subject to. But if you read the Johnson case, that's kind of the precedent-setting case, Johnson v. Chicago. In that case, an officer was walking across a street after a citizen told him of a traffic accident, and as the officer walked across the street, he slipped and fell, hurt his hand, and never recovered to the point that he could do police work. And the court in that case said it's the crux of the capacity that should be noted in determining whether an officer is given a line of duty pension. It doesn't matter whether the work was inherently dangerous or whether it was not inherently dangerous. But in Johnson, the officer didn't have a preexisting hand injury, did he? No, he did not. But Barber v. South Barrington, the officer was involved in what was somewhat of a really minor traffic accident, and he had a preexisting condition, and the court did rule in his favor and said that he was entitled to a line of duty pension. And the same thing is true of Rose v. Mount Prospect. I think an officer was at a gas station when another motorist rear-ended his squad car. I don't think the motorist who, if you read the facts, I don't think the motorist who hit the squad car was traveling at a high rate of speed, but for some reason this triggered injuries in the officer related to a preexisting condition, and the officer was not able to return to duty. How did the fingerprinting incident aggravate the plaintiff's condition? Well, as I keep saying, he already had depression and anxiety, and I think when he saw, when he perceived the inmate as a threat to himself, he just, you could say in the eyes of a healthy person, he overreacted. He was just overstimulated. That is worn out by the record, and he took it as a real threat. But what evidence was put on, I know I asked the question a little bit earlier too, to show that the condition was aggravated? Well, the fact that he was never able to return to duty I think is dispositive. After he panicked when he saw an inmate scratching his head and perceived it as a real threat, he was forced to leave the jail, and later on that day he went home from work ill, and the next morning he was in such a state that his wife insisted that he stay home. He couldn't function, and I think he called off work three times, and then he wound up going, seeking specialized care at a psychiatric facility. So you're saying that this is sufficient for a line-of-duty pension? Yes. If you read the case law, you don't, as I said earlier, you don't have to be doing, an officer doesn't have to be doing something dangerous to get a line-of-duty pension. And fingerprinting an inmate in the jail is unique to police work. What other comparison is there to civilian life? So you're saying the fact that he got worse in and of itself shows the aggravation? Yes. And the connection? In and of itself, he got so bad that he couldn't continue his job indicates that he's entitled to a pension. Because you can have differing degrees of injury that don't necessarily entitle you to a pension, but once it's determined that he no longer can serve as a police officer, then it may. Well, two of the three doctors did not think that he could go back to work anytime soon, the doctors chosen by the pension board. Now, Dr. Wien was the only doctor who thought that he had recovered to the point that he could return to duty, but Dr. Obolsky and Dr. Shaw both said that he was not well enough to go back to police work. And Dr. Alford, the doctor for the police department, also did not think he should be returning to duty. Was there a date, because I don't remember, where any expert opined as to when this mental disability manifested itself? I believe it was January 5, 2010, when he panicked in the jail and was not able to return to duty. Well, I'm looking much earlier in time. What I'm suggesting is that the panic attack came about because of a traumatic situation, but it also came about because he was not normal in the sense that in a normal individual, this probably would not have triggered the panic attack. So there must have been some difficulty, dysfunction, disability, injury, whatever you want to call it, that existed before the panic attack that was the deficiency that made the panic attack possible, probable, and actual. Well, looking back over the record, Mr. Kern showed signs of anxiety, even at the time he was psychologically tested to become a police officer. The record shows that there were signs then that he was not well. The report said that he did show signs of anxiety, that he was immature, and that he showed signs of hostility. Nevertheless, he was still hired. Well, you answered my question. Thank you. All right. So to sum it up, I think looking at the totality of the evidence, you have three doctors, two chosen by the pension board, one chosen by the police department, who say that Mr. Kern was not well enough to return to duty and that he suffered from anxiety. And the fact that Mr. Kern could not return to his job after experiencing a panic attack in the jail shows that his condition was exasperated by that event. Thank you. I have an opportunity to make a vote. Mr. Carlson, you may proceed. May it please the court, my name is Keith Carlson, law firm of Reamer & Carlson in Tinsdale. I represent the St. Charles Police Pension Board before you today. Ms. Bell started her argument by emphasizing that this case is about the totality of the evidence. However, that isn't the standard before you. The manifest weight of the evidence is. As the Supreme Court stated in Marconi v. Chicago Heights Police Pension Board, in order for you to affirm, you are mandated to affirm the pension board's decision as long as there is some competent evidence in the record to support our opinion. Ms. Bell saved me some of the heavy lifting by quoting a portion of Dr. Wroblewski's report that in and of itself is enough for this court to affirm, which is that his condition, his disability is solely caused by a pre-existing condition. Which the department knew about when they hired him. Certainly. Absolutely. In fact, I think you would probably have problems as a hiring practice while I don't represent the village if you started to exclude people with pre-existing conditions who still were able to do whatever job tasks they had. But that being aside from the point, it doesn't make it a duty-related disability. Under Robbins v. Carbondale Police Pension Board, there's an obligation by the applicant for a pension in order to get a line-of-duty disability pension to point to a specific identifiable police duty that caused the condition. Generalized anxiety caused by observing the violent nature of things the police officers are exposed to is insufficient. There's a line of appellate cases both in this district as well as your sister and brother districts across the state that hold the same thing. In this case, not only though, is there a single doctor, Dr. Wroblewski, but not one of the three doctors who were appointed by the pension board, who did independent medical examinations of the applicant, found that his disability resulted from an identifiable act of police duty. In fact, they find quite to the contrary, that it was solely caused by his pre-existing condition. It is not caused by, and Justice McLaren just started the conversation talking about whether or not this was an injury or symptomology, and I'm going to try to split that here one more time, is the disability, which is the statutory language, caused by an act of police duty. And the doctors say no. That in and of itself is not only some competent evidence, it's overwhelming competent evidence. It is the only expert evidence in the record. The board found there was a split of opinion with whether or not the plaintiff was disabled. The pension board went with the two doctors who said he was disabled. Some of the doctors found that he had exaggerated his symptoms, exaggerated his response to things. Moreover, as was brought on and discussed, whether or not this arises from a specific bit of duty, identifiable act of duty, and whether or not this is more akin to somebody falling out of a chair or crossing the street. First of all, the Supreme Court in Robbins made clear that psychiatric disabilities are treated differently than traditional physical injuries, one. Two, the cases cited by counsel Rose and Barber, both are physical injuries, as well as there was evidence in the record that proved that they were aggravations of a pre-existing disability. There is no evidence here. Instead, what you have is a person who has a pre-existing condition, shows up to work, and becomes symptomatic. And the cause of the symptomatic, it is reasonable based on the record for the pension board to conclude, is not the fingerprinting. Instead, it is a misperception of threat, which is not unique to police work. In fact, it's something that commonly happens to anyone who has a pre-existing mental condition like a plaintiff does. His problems here are not caused by police work. Could be encountered anywhere. Absolutely. And if you have this pre-existing condition like a plaintiff did, your misperception of threat, perhaps asking a question, perhaps the fact that I wore a tie to court today, or whatever, I may misperceive as a threat, but that's not because of my status as a lawyer, and it wouldn't be because of my status as a police officer. It's due to the fact that I have a mental condition that has nothing to do with my police duties. Moreover, the record makes very clear, based upon the expert evidence that was presented, that the three doctors all believe it had nothing to do with any specific identifiable police acts. They take into account both the 2005 allegation as well as the 2010 fingerprinting, and they were dismissed, both by Shaw, as well as Wolski, who found him to be disabled, as well as Dr. Wine, who found that he was not even disabled. In all those circumstances, there is more than some competent evidence in the record. There is overwhelming evidence. There is uncontroverted evidence in the record that shows that this is not related to police duty. As such, even if you wanted to ignore the manifest weight standard and apply this totality of the evidence standard, the totality of the evidence is overwhelmingly against the plaintiff in this case. However, you are, under Supreme Court as well as your own precedent, bound by the manifest weight standard. As such, in light of the arguments that I've made in our brief, I won't belabor them any further. I ask if you have any questions otherwise. I would characterize totality of the evidence. The totality of the evidence is that we have three experts, all of whom agree. No, that's not what I meant. What I meant was, is it the noble review? Is it the noble hearing? I have no idea. Is it abuse of discretion? Is it manifestly erroneous? I guess if we were going to have a hypothetical argument, the standard here is the manifest weight standard, and the manifest weight standard mandates affirmation of the trial court. I didn't ask you that. What I asked you was what or how would you categorize totality of the evidence? I have no idea what it is. And that's part of the problem is that that's not what this case is. That's not what the jurisprudence of our state says that it is. The only way that administrative bodies can function and have any of the efficiencies by which the purpose of their creation is made is for them to be affirmed, that they're trusted to make judgments based upon how to interpret differing evidence. And in this case, as well as every other administrative review case that I'm aware of, in similar circumstances, it is reviewed on a manifest weight standard, at least under Marconi as well as other cases that I'm aware of. In light of the foregoing, we ask that you affirm the trial court's decision and deny the plaintiff's application for a line of duty disability. Thank you. Ms. Bell? In response to my opponent, I cite Wade v. North Chicago. In that case, it's a Supreme Court case. The court said that a pension board must look at the totality of the evidence. And the totality of the evidence shows that Mr. Kern had a preexisting condition that worsened by his panic attack in the jail. The pension board looks at all the evidence? Right, the pen must look at all the evidence. And you agree that the standard of review is manifest weight? Correct, yes. So there's no dispute between you and counsel? No. So in Wade v. North Chicago, I'll make the analogy. That officer was forced to retire from police duty due to a knee injury. That knee injury was first sustained during a football game in which the officer engaged in. Later, his condition got worse when he was arresting someone in a ravine and his knee reached the point where the officer could no longer do police duty. The same thing with Mr. Kern. He was suffering from a preexisting condition. He had depression and anxiety. He overreacted in the jail. It was called an extreme panic attack. He was never able to return to duty. Well, the distinction between those two cases is the manifestation of the injury for the police officer with the bad knee was brought on by his duty, and the testimony was that this panic attack could have been brought on by anything, almost anything. It was not necessarily duty-related, correct? Is that the sum and substance of the medical testimony or the expert testimony? Not according to Dr. Shaw. His disability is due to the preexisting condition. Of note, the panic attack was due to the preexisting depressive disorder. I understand the point you're trying to make, yes. Right, and for the record, Dr. Obolsky said that Mr. Kern was not malingering. He was not exaggerating. Fingerprinting someone in the jail is unique to police duty. It's not something that everybody does, and if you look at what is it like to get into a jail, they don't allow just anybody into a jail, into a cell, to interact with suspects and prisoners. So I submit that Mr. Kern's injury, his panic attack in the jail, was unique to police work, and obviously it's a single identifiable incident. Well, is it your contention that the board did not consider the totality of the evidence? Yes. In regard to what evidence did they not consider? They overlooked the fact that Mr. Kern was never able to return to police work after he panicked in the jail and that he suffered from depression and anxiety that led to this extreme panic attack. Okay. It's unusual that we hear cases that are based primarily on manifest way to the evidence. Usually we deal with things that are more concerned with questions of law. So the questions we've been asking are somewhat narrowly tailored to the particular appeal. Thank you. The case will be taken under advisement. If we have other cases on the call, there will be a short recess.